**FILED**

**JANUARY 23, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**08 C 521**

| | |
|---|---|
| **ERIC J. FULGHAM** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Sgt. CHESTER SMITH (#301),** | ) |
| | ) |
| **OFFICER JASON GOODWIN,** | ) |
| | ) |
| **OFFICER TYLER BURGESS,** | ) |
| | ) |
| **ROB BUCK, Chief of Police of City of Rochelle,** | ) |
| | ) |
| **CITY OF ROCHELLE, ILLINOIS,** | ) |
| | ) |
| **Defendants** | ) |

No. _____ **JUDGE GOTTSCHALL**
**MAGISTRATE JUDGE VALDEZ**

**JURY DEMAND**

**J. N.**


## VERIFIED COMPLAINT

The Plaintiff for his cause of action against Defendants states as follows:


### I:  INTRODUCTION

This action arises under the Fourth and Fourteenth Amendments of the United States Constitution; under federal law, specifically, 42 U.S.C. §1983 and 1988 and under the Illinois common law for intentional and/or negligent infliction of emotional distress, malicious abuse of process, negligence, negligent supervision, gross negligence, false imprisonment, false arrest, and civil conspiracy.

While the individual Defendants were acting in the scope of their employment and under color of state law, they made an unlawful arrest of Plaintiff that resulted in unreasonable detention of Plaintiff. Defendants' actions caused injury to Plaintiff.

Action is also brought against the City of Rochelle for its failure to properly train and supervise the individual Defendants in the proper use of force and techniques used to place a person under arrest and its establishment of policies, procedures, practices, and customs regarding actions that result in unlawful arrest and unlawful detention.

## II: JURISDICTION AND VENUE

1.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1343, and 1367, and venue is properly set in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391.

2.      The causes of action alleged herein arise from factual allegations occurring in this judicial district.

3.      On information and belief, it is alleged that each of the named Defendants resides in this judicial district.

4.      Plaintiff resides in Cook County, Illinois.

### III:  PARTIES

**A.  Plaintiff**

6.      Plaintiff, ERIC J. FULGHAM (Fulgham or Plaintiff) is a natural person residing in Maywood, Illinois, United States of America and was a resident of Maywood during relevant times of this action.

**B. Defendants**

7.      Defendant, **SGT. CHESTER SMITH** (Sgt. Smith or Smith) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Sergeant employed by the City of Rochelle, Illinois and was acting under color of state law.

8.       Defendant, Officer **JASON GOODWIN** (Officer Goodwin or Goodwin) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Officer employed by the City of Rochelle, Illinois and was acting under color of state law.

9.      Defendant, Officer **TYLER BURGESS** (Officer Burgess or Burgess) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Officer employed by the City of Rochelle, Illinois and was acting under color of state law.

10.      Defendant, **ROB BUCK**, (Buck) is a citizen and resident of Rochelle, Ogle County, Illinois and was at all times material to the allegations in this Complaint, employed as the Chief of Police by the Rochelle Police Department in Ogle County, Illinois, and is responsible for the supervision and training of the Defendants, SMITH, GOODWIN and

BURGESS. Defendant BUCK, as the Chief of the Rochelle Police Department is further, responsible for making and/or implementing policies and practices used by law enforcement officers employed by the City of Rochelle, Illinois regarding arrests and detention.

11.     The Defendant, CITY OF ROCHELLE, is a political subdivision of the State of Illinois, for which Defendants SMITH, GOODWIN and BURGESS serve as police officers, and BUCK serves as Chief of Police. City of Rochelle is the political subdivision of the State of Illinois responsible for the training and supervision of Defendants SMITH, GOODWIN, BURGESS and BUCK. City of Rochelle has established or delegated to Defendant BUCK the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by City of Rochelle regarding arrests and detention.

## IV: FACTS

12. Plaintiff and his estranged wife Rhia Fulgham (Rhia) were married in 2001 and by 2003 were separated. One child, Autumn; a daughter and at all times relevant a minor, was born to the parties.

13. Rhia subsequently filed for divorce on July 18, 2007 at Rockford, Illinois.

14. At the time of filing her divorce petition, Rhia had custody of the minor child.

15. On August 7, 2007, at the first hearing of Rhia's divorce petition, Plaintiff was awarded visitation with the minor child beginning August 11, 2007 and under the court ordered visitation, Plaintiff was to pick up the minor child from Rhia on alternate weekends beginning from 9:00am on Saturday until 7:00pm on Sunday. (see attached Plaintiff's exhibit A).

4

16.  Under the visitation arrangement agreed to by both Plaintiff and Rhia, Plaintiff would pick up and drop off the child at Rhia's apartment at 105 West McConaughy Avenue in Rochelle.

17.  On Sunday, August 12, 2007 while dropping off the child after his visitation with the child, Plaintiff arrived at Rhia's address and then advised Rhia to call the police because he had concerns about possible abuse based on what his daughter had told him.

18.  Before the police came to the scene, Rhia and her boyfriend Steven Wodrazka came downstairs to Plaintiff's car and attempted to forcibly remove the child from Plaintiff's car.

19.  Seeing that the child was hesitant about exiting the car, Plaintiff advised Rhia that it was best to wait for the police to arrive. Plaintiff then exited from the car and wedged himself between the rear car door and Rhia in order to prevent Rhia from forcefully removing the child from the car.

20.  Within minutes, Sgt. Smith and Officer Burgess arrived at the scene. This was the first time Sgt. Smith and Officer Burgess became aware of the Plaintiff's and Rhia's custody and visitation issues.

21.  Upon arriving at the scene, Sgt Smith and Officer Burgess demanded to know what was amiss and were given conflicting accounts by Rhia, Rhia's male friend Steve and Plaintiff.

22.  Rhia claimed that Plaintiff had physically assaulted her and demanded Plaintiff's immediate arrest. Sgt. Smith and Officer Burgess then looked Rhia over and not finding any signs of physical assault decided that her claim did not have any

merit. Sgt. Smith did indicate in his report entered on August 15, 2007 that he looked Rhia over at the scene on August 12, 2007 but did not observe any injuries or signs of physical altercation. (see copy of Sgt. Smith's report marked Plaintiff's exhibit B)

23.    Fearing that his pick up and drop off of his daughter would be marked by arguments, Plaintiff then suggested and Rhia agreed that the picking up and dropping off the child should be done at the Rochelle police station.

24.    Whereupon, Plaintiff and Rhia in the presence of Sgt. Smith and Officer Burgess entered into an oral agreement to pick up and drop off the child at the Rochelle police station. Officer Burgess did indicate in his report entered on August 12, 2007 that he and Sgt. Smith were privy to the agreement and further that there were no signs of physical altercation that would have justified an arrest of Plaintiff. (see attached copy of Officer Burgess' report marked Plaintiff's exhibit C).

25.    On or about August 13, 2007, Rhia filed a petition for an order of protection against Plaintiff based on reports filed by Sgt. Smith, Officer Burgess and Sgt. Phil Frankenberry (see Sgt. Frankenberry's report marked as Plaintiff's exhibit D).

26.    Plaintiff believes that Sgt. Smith and Officer Burgess conspired to write an erroneous report supporting Rhia's claim of physical assault in order to set in motion the chain of events that would lead to Plaintiff's eventual false arrest.

27.    Plaintiff's belief of the foregoing stems from the fact that Sgt. Smith and Officer Burgess were well aware that no physical assault had occurred on August 12,

2007, but went ahead to file and support Rhia's phony report which enabled her to secure an Order of Protection against Plaintiff. In fact, Smith and Burgess knew that there was no basis for the order of protection.

28.    Rhia was granted an emergency order of protection by Judge Robert Hansen on August 13, 2007. (see attached document marked as plaintiff's exhibit E)

29.    On August 29, 2007, after a hearing on the order of protection Judge Robert Hansen entered a plenary order of protection against Plaintiff requiring Plaintiff to stay 300 feet away from Rhia and Rhia's residence.

30.    Within the said order of protection, Judge Hansen also maintained the visitation arrangement already in place between the parties and advised that for purposes of the visitation (Picking up and dropping off of the minor child), the 300 feet requirement in the order of protection will not apply. (see attached document marked as plaintiff's exhibit F)

31.    On September 9, 2007, Plaintiff traveled from Maywood to Rochelle to drop off the minor child after his visitation with her. He drove up to the Rochelle police station where Rhia was supposedly waiting pursuant to their earlier agreement for the transfer of the child.

32.    Upon arriving at the Rochelle Police Station, Plaintiff took daughter into the lobby of the station and handed her over to an officer who was in the lobby and advised that Rhia was within the building and promised to take the child to Rhia.

33.    As Plaintiff was walking back to his car, he was accosted by Sgt. Smith who emerged from the police station building. Sgt. Smith then threatened to arrest Plaintiff the next time Plaintiff was within three hundred (300) feet of Rhia.

34.    Plaintiff demurred that the order of protection waived the 300 feet requirement for visitation purposes. Sgt. Smith told Plaintiff that he had seen Rhia's copy of the order and there was nothing in it permitting Plaintiff to come within 300 feet of Rhia. Plaintiff thereupon advised Sgt. Smith to look at the order again.

35.    On October 6, 2007, Plaintiff, accompanied by a female friend, Karen, traveled to Rochelle for the purpose of picking up Plaintiff's daughter for his visitation with her.

36.    At about 9:07am, an agitated Rhia called Plaintiff's cell phone and stated that she was waiting at the station with their daughter and that she was becoming impatient because Plaintiff had failed to arrive at the appointed time of 9:00am. Plaintiff advised that he was about fifteen (15) minutes away and begged Rhia to be patient. However, Rhia threatened to leave if Plaintiff did not get to the police station at 9:30am.

37.    At about 9:25am, Plaintiff pulled up to the intersection of Route 251 and Route 38. He was westbound and needed to make a left turn unto Route 251 which would bring him within a few blocks of the Rochelle police station.

38.    Whilst waiting for the light, Plaintiff saw Rhia's car on the north bound lane of Route 251. He could see that Rhia was in the driver's seat with Rhia's male friend, Steve in front and his daughter in the rear. Rhia proceeded to cross the intersection and continued northbound on Route 251.

39.    At this point, Plaintiff believed that Rhia was carrying out her threat of leaving with the child thereby denying him visitation for which he had driven close to two hours from Maywood to Rochelle.

40.    Plaintiff then called Rochelle Police Station on his cell phone and reported to the police dispatch that he was supposed to pick up his daughter at the station but that he had just seen her being driven away by Rhia. Plaintiff also advised the police dispatch that he was turning his car around and going after Rhia's car. He requested that an officer be dispatched in order to effectuate a peaceful pick up of the child. Plaintiff was advised that an officer would be dispatched.

41.    Plaintiff then followed Rhia's car into the parking lot of a vet's office on Route 251 and parked about fifty (50) feet from where she was parked. Whilst he did so, he remained on the telephone with the Dispatch at the Rochelle Police Station.

42.    The Rochelle Police Dispatch then put Sgt. Smith on the phone with Plaintiff and Plaintiff advised Smith that about what was going on. Smith advised Plaintiff to stay put at the parking lot and that he would be on his way shortly.

43.    Moments later, plaintiff could hear the sound of siren coming from the direction of the police station. Plaintiff also saw his daughter and Rhia's male friend exit from Rhia's car and walk into the vet's office.

44.    Shortly thereafter two squad cars pull into the parking lot with amber lights flashing. Plaintiff was relieved that the police had responded so quickly. However, Plaintiff was mildly surprised when he saw that the police officer who was parked behind him, somewhat hedging his car in to prevent him from backing out was none other but Sgt. Smith. The officer in the other squad car was Officer Jason Goodwin.

45.    Upon seeing Sgt. Smith, Plaintiff began to exit his car, but Sgt. Smith immediately ordered him to remain inside the car.  At the same time, Smith also

advised Rhia who had gotten out of her car and was walking towards Smith, to get back to her car. Plaintiff was relieved, believing that since Smith had prior knowledge of the visitation arrangement, he would know how to handle the situation.

46.     Sgt. Smith then proceeded to the passenger door of Plaintiff's car and ordered Plaintiff's female friend Karen out of the car. Smith ordered Karen to remove everything in her pockets and then took her aside and advised her that he was going to place Plaintiff under arrest for violating an order of protection.

47.     Plaintiff's female friend, Karen, was taken aback by the belligerent and hostile attitude of Sgt. Smith who acted as if he had a personal score to settle with Plaintiff.

48.     Plaintiff strongly believes that Sgt. Smith was biased against him and had taken sides with Rhia because Plaintiff is black and Rhia is white. Plaintiff also believes that Sgt. Smith had conspired with Rhia to arrest and humiliate him.

49.     Plaintiff also believes that Sgt. Smith had instigated Rhia to leave the police station rather than wait for Plaintiff to arrive in order to set in motion the events leading to plaintiff's false arrest. In an incident report filed by Sgt. Smith, he indicated that he advised Rhia to file a report and leave the police station) (See attached document marked as Plaintiff's exhibit G)

50.     After conversing with Plaintiff's female friend, Smith returned to Plaintiff's side of the car and ordered him out. He then asked him to put his hands behind his back. Smith proceeded to put handcuffs on Plaintiff's wrists.

51.     After cuffing Plaintiff, Sgt. Smith advised Plaintiff that he was placing him under arrest for being within 300 feet of Rhia. Smith proceeded to walk Plaintiff to Officer Goodwin's squad car.

52.     Concerned that Sgt. Smith was overreacting, Plaintiff advised Smith that he was merely there to pick up his daughter pursuant to the visitation order. He then advised Smith to look at the Judge's order in an envelope in his car.

53.     Officer Goodwin then placed the handcuffed Plaintiff in his squad car as Smith removed the court order from Plaintiff's car and proceeded together with Officer Goodwin proceeded to read through it.

54.     After reading the court order, Sgt. Smith put it back in the envelope and kept the envelope with him. He then told plaintiff that he was arresting him anyway.

55.     The visitation arrangement between Plaintiff and Rhia was very much known by every virtually all the policemen at the Rochelle Police Station since it had been going on for some time. Therefore, Plaintiff was peeved that Sgt. Smith and Officer Goodwin insisted on placing him under arrest when they knew or should have known that he was in Rochelle merely to pick up his daughter.

56.     Despite the fact that Sgt. Smith and Officer Goodwin were very familiar with the visitation arrangement between Plaintiff and Rhia and having had another opportunity of reviewing the Order of Protection, Sgt. Smith and Officer Goodwin still proceeded to place Plaintiff under arrest.

57.     Plaintiff was then driven to the Rochelle Police Station by Officer Goodwin.

58.     Shortly after Plaintiff arrived at the station, Plaintiff was accosted by Sgt. Smith who took Plaintiff to a room and without giving Plaintiff a Miranda warning

demanded that Plaintiff explain "once again" why he should not be prosecuted for violating the order of protection.

59.     Plaintiff again tried to explain to Smith that he had a right to be within 300 feet of Rhia pursuant to the visitation order and implored Smith to take "another look" at the Order which Smith still had in his possession.

60.     Again, Sgt. Smith read through the order of protection and then told Plaintiff that he believed that Plaintiff was in violation of the order of protection. Smith advised plaintiff that he should clarify that with the court if he was in doubt.

61.     Sgt. Smith then handed the order back to Plaintiff and again, Plaintiff indicated to Smith the portion of the order that Plaintiff believed waived the 300 feet requirement for visitation purposes.

62.     Again, Smith told Plaintiff that it was up to him, Smith, to choose the portion of the order that he wanted to act on. Smith then added that he had chosen to act on the 300 feet requirement and nothing else.

63.      Plaintiff was then taken to a holding cell at the Rochelle Police Station where he remained until about 10 pm when sheriffs from the Ogle County jail arrived to pick him up.

64.     Plaintiff believes that it was unreasonable for Sgt. Smith to have put him in the holding cell at the Rochelle Police Station for more than eleven hours.

65.     Plaintiff also believes that Sgt. Smith intentionally left him at the holding cell and delayed informing the Ogle County jail about picking him up from Rochelle which was less than thirty minutes from Ogle County Jail at Oregon, in order to

further humiliate Plaintiff and subject him to emotional torment and psychological abuse.

66.    Plaintiff was brought into the Ogle County jail at about 11:00pm on that October 6, 2007 where he was processed. His mug shot and fingerprint were taken and this contributed to Plaintiff's mental anguish and emotional torment.

67.    Plaintiff was then falsely charged with the offence of violation of order of Protection.

68.    Plaintiff was subsequently released from custody on October 7, 2007 at about 6:00 pm more than thirty-two hours after his ordeal began.

69.    Plaintiff was slated to appear in court on a charge of violating the order of protection on October 26, 2007 but Plaintiff found out upon arriving at the court that the state's attorney's office had refused to press charges against him because he should never have been arrested in the first place.

70.    Each of the Defendants, individually, and in concert with others, acted under color of law in his/their official capacity, to deprive Plaintiff of his rights to freedom from illegal seizure of his person, and his rights to freedom from unlawful arrest, detention, and imprisonment.  All of these rights are secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983.

71.    The actions of defendants Sgt. Smith and Officer Goodwin were willful and wanton since they had prior cognizance of the visitation arrangement between Plaintiff and his estranged wife Rhia and also of the contents of the order of protection and still went ahead to subject plaintiff to cruel arrest and detention.

72.     The actions of defendants, Officer Tyler Burgess and Sgt. Smith were willful and wanton since they were cognizant of the fact that Plaintiff neither caused any physical harm nor threatened to do so to his estranged wife Rhia yet they went ahead to set in motion the events leading up to Plaintiff's false arrest.

73.     The Defendants, Rob Buck and the City of Rochelle, failed to adequately supervise the Defendants, Smith, Goodwin and Burgess.

74.     At the time of the incidents alleged herein and before, Plaintiff was emotionally and physically healthy, active, and fully capable of engaging in normal day-to-day activities.

75.     Since the time of his false arrest and detention Plaintiff's ability to perform and enjoy his usual activities, including family and work-related activities, has been impaired.  In addition, Plaintiff has suffered severe emotional distress and mental anguish affecting his psychological well-being.

76.     As a direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiff sustained severe mental pain and suffering and injury in an amount that will be established at trial.

77.     Plaintiff is entitled to compensation for the constitutional harms that the Defendants inflicted upon him, including personal injury and loss of liberty.

78.     Plaintiff is entitled to compensation pursuant to Illinois common law for harms inflicted upon him by the Defendants.

## V.    CAUSES OF ACTION

### COUNT I

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (General Allegations)

79.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

80.    In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to:  a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; and c) the right to be free from false arrest.

81.    In violating Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unauthorized, warrantless, and illegal arrest and detention of Plaintiff in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

82.    As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C §1983.

83.    The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT II

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**(Failure to Implement Appropriate Policies, Customs and Practices)**

84.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

85.     Defendant Rob Buck, in his capacity as Chief of Police of the Rochelle Police Department in Ogle County, Illinois, and the Defendant, City of Rochelle, implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the Rochelle Police Department to conduct arrests without regard to propriety and without justification or probable cause.

86.     The failure of the Chief of Police, Rob Buck, and the City of Rochelle to adequately train and supervise the Defendants Smith, Burgess and Goodwin amounts to deliberate indifference to the rights of Plaintiff to be free from illegal arrest under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

87.     As a result of this deliberate indifference to Plaintiff's rights, the Plaintiff suffered personal injuries and is entitled to relief under 42 U.S.C. §1983.

88.     In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff as alleged herein of certain constitutionally protected rights including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law and; c) the right to be free from false arrest.

**COUNT III**

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(False Arrest)**

89.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

90.     In committing the acts complained of herein, Defendants Smith and Goodwin acted under color of state law by falsely arresting and detaining the Plaintiff with no basis in fact or law to do so.  In violating Plaintiff's right to be free from false arrest, the Defendants violated Plaintiff's rights under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

91.     As a direct and proximate result of the violation of his constitutional right to be free from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

**COUNT IV**

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Malicious abuse of Process)**

92.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

93.     Defendants maliciously used a "legal process" to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

94.    Defendants Smith and Burgess supported Rhia's baseless allegations of physical assault knowing same to be false and fabricated in order to set the events that would lead to Plaintiff's arrest in motion.

95.    Defendant Sgt. Smith advised Rhia to leave the Rochelle Police Station on the day of Plaintiff's visitation with his child, knowing that such in order to set in motion events that would lead to Plaintiff's arrest.

96.    Defendant Sgt. Smith had the opportunity of reading through the order of protection several times prior to and on the date of the arrest and resorted to arresting and detaining Plaintiff because that is what he had intended all along.

97.    Defendants Sgt. Smith and Officer Burgess knew or should have known that there was no basis to support Rhia's order of protection.

98.    Defendants Sgt. Smith and Officer Goodwin knew or should have known that Plaintiff should not have been arrested.

99.    In committing the acts complained of herein, Defendants Smith, Burgess and Goodwin acted under color of state law by malicious abuse of process and subjecting Plaintiff to cruel maltreatment with no basis in fact or law to do so.  In violating Plaintiff's right to be free from false arrest, the Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

100.    As a direct and proximate result of the violation of his constitutional right to be free from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

## COUNT V

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983
(Conspiracy)**

101.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

102. As a result of the concerted unlawful and malicious conspiracy of Defendants Smith, Burgess and Goodwin, Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

103.    As a direct and proximate result of the violation of his constitutional right to be free from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

## COUNT VI

**Illinois Common Law
(False Arrest / False Imprisonment)**

104.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

105.    Plaintiff avers that the Defendants breached a duty of care owed to Plaintiff, so as not to deprive him of his personal liberty, by intentionally restraining or detaining Plaintiff without just cause and without due mittimus from a court.

106.    Plaintiff avers that the Defendants, without probable cause, wrongfully and unlawfully detained and restrained Plaintiff against his will through use of force for a period of close to thirty-two hours.

107.    At no time during the detainment did Plaintiff resist or attempt to resist the Defendant officers, but was fully cooperating with the orders of the Defendants who intimidated Plaintiff with uniforms.

108.    Plaintiff avers that the Defendants are liable to him for false arrest and false imprisonment.

109.    As a direct and proximate result of the false imprisonment by the Defendants, Plaintiff suffered serious personal injuries and severe emotional distress.

## COUNT VII

**Illinois Common Law**
**(Negligence)**

110.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

111.    Each Defendant owed Plaintiff a duty to use due care at or about the times of the aforementioned incident.

112.    In committing the aforementioned acts and/or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to the Plaintiff as alleged herein.

## COUNT VIII

**Illinois Common Law**
**(Negligent Supervision)**

113.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

114.    Each Defendant owed Plaintiff a duty to use due care at or about the time of the aforementioned incidents.

115.    Defendants Chief Buck and City of Rochelle, Illinois negligently supervised Defendants Smith, Burgess and Goodwin by failing to provide proper training and outline proper procedure in confronting and arresting people.

116.    In committing the aforementioned acts or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to Plaintiffs as alleged herein.

## PRAYERS FOR RELIEF

**WHEREFORE**, the above premises considered Plaintiff demands:

1.    That process issue to the Defendants and that they be required to answer in the time allowed by law.

2.    That judgment be rendered in favor of the Plaintiff and against the Defendants on all causes of action asserted herein.

3.    That Plaintiff be awarded those damages to which it may appear he is entitled by the proof submitted in this cause for his physical and mental pain and suffering, both past and future; loss of enjoyment of life;  and medical and psychological expenses, both past and future.

4.    That Plaintiff be awarded punitive damages against the Defendants.

5.    That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988 (b) and (c).

6.    That the Plaintiff receives any other further and general relief to which he may appear they is entitled.

7.    A jury for the trial of this matter.

Respectfully submitted,

ERIC J. FULGHAM

by    s/ Uche O. Nwakudu___

Uche O. Nwakudu
Ebere N. Ekechukwu

Attorneys for Plaintiff

Uche O. Nwakudu (#6288467)

53 West Jackson Boulevard, Suite 1440

Chicago, Illinois 60604

(312) 922-8243

Ebere N. Ekechukwu (#6243587)

53 West Jackson, Suite 1440

Chicago, Illinois 60604

(312) 362-9844

## PLAINTIFF'S VERIFICATION

The undersigned, being duly sworn, deposes and says that I am the Plaintiff herein and that the foregoing pleading filed on my behalf, and the facts stated therein are true.

_Eric Fulgham_                    _Jan 11, 2008_

Eric J. Fulgham                          Date

Subscribed and sworn to before me, this __11th__ day of __January__, 2008.

_Uche O. Nwakudu_

Notary Public

> OFFICIAL SEAL
> UCHE O NWAKUDU
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:07/31/08

23