**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC J. FULGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  08 C 521 |
| | ) | |
| Sgt. CHESTER SMITH (#301), OFFICER | ) | Judge Joan B. Gottschall |
| JASON GOODWIN, OFFICER TYLER | ) | |
| BURGESS, ROB BUCK, Chief of Police of | ) | Magistrate Judge Maria Valdez |
| City of Rochelle, CITY OF ROCHELLE, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO COMPLAINT**

Defendants, Chester Smith, Jason Goodwin, Tyler Burgess, Rob Buck and the City of Rochelle, Illinois, for their answer to the complaint of plaintiff, state as follows:

**I: INTRODUCTION**

This action arises under the Fourth and Fourteenth Amendments of the United States Constitution; under federal law, specifically, 42 U.S.C. §1983 and 1988 and under the Illinois common law for intentional and/or negligent infliction of emotional distress, malicious abuse of process, negligence, negligent supervision, gross negligence, false imprisonment, false arrest, and civil conspiracy.

While the individual Defendants were acting in the scope of their employment and under color of state law, they made an unlawful arrest of Plaintiff that resulted in unreasonable detention of Plaintiff. Defendants' actions caused injury to Plaintiff.

Action is also brought against the City of Rochelle for its failure to properly train and supervise the individual Defendants in the proper use of force and techniques used to place a person under arrest and its establishment of policies, procedures, practices, and customs regarding actions that result in unlawful arrest and unlawful detention.

**ANSWER:**    Defendants admit that the allegations of plaintiff's complaint allege an action brought pursuant to 42 U.S.C. § 1983, but specifically deny the truth of those allegations as more fully set forth below.

## II: JURISDICTION AND VENUE

1.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§§1331, 1343, and 1367, and venue is properly set in the United States District Court for the

Northern District of Illinois pursuant to 28 U.S.C. §1391.

**ANSWER:**    Defendants admit that the allegations of plaintiff's complaint give rise to federal question jurisdiction, but specifically deny the truth of those allegations as more fully set forth below. Defendants further admit that those facts give rise to venue within the U.S. District Court for the Northern District of Illinois, but affirmatively aver that venue is proper in the Western Division of that District.

2.    The causes of action alleged herein arise from factual allegations occurring in this

judicial district.

**ANSWER:**    Defendants admit the allegations of paragraph 2 of plaintiff's complaint.

3.    On information and belief, it is alleged that each of the named Defendants resides in

this judicial district.

**ANSWER:**    Defendants admit the allegations of paragraph 3 of plaintiff's complaint, except that defendant Tyler Burgess now resides in Nevada.

4.    Plaintiff resides in Cook County, Illinois.

**ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 4 of plaintiff's complaint.

## III: PARTIES

### A. <u>Plaintiff</u>

6.    Plaintiff, ERIC J. FULGHAM (Fulgham or Plaintiff) is a natural person residing in

Maywood, Illinois, United States of America and was a resident of Maywood during relevant times

of this action.

**ANSWER:**    Defendants admit the allegations of paragraph 6 of plaintiff's complaint except that defendants are without sufficient knowledge or information to form a belief as to the truth of the allegation that plaintiff resides in Maywood, Illinois.

**B. <u>Defendants</u>**

7.    Defendant, SGT. CHESTER SMITH (Sgt. Smith or Smith) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Sergeant employed by the City of Rochelle, Illinois and was acting under color of state law.

**ANSWER:**    Defendants admit the allegations of paragraph 7 of plaintiff's complaint.

8.    Defendant, Officer JASON GOODWIN (Officer Goodwin or Goodwin) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Officer employed by the City of Rochelle, Illinois and was acting under color of state law.

**ANSWER:**    Defendants admit the allegations of paragraph 8 of plaintiff's complaint.

9.    Defendant, Officer TYLER BURGESS (Officer Burgess or Burgess) is a citizen and resident of Rochelle, Ogle County, Illinois, and was at all times material to the allegations in this Complaint, acting in his capacity as a Police Officer employed by the City of Rochelle, Illinois and was acting under color of state law.

**ANSWER:**    Defendants admit the allegations of paragraph 9 of plaintiff's complaint.

10.    Defendant, ROB BUCK, (Buck) is a citizen and resident of Rochelle, Ogle County, Illinois and was at all times material to the allegations in this Complaint, employed as the Chief of Police by the Rochelle Police Department in Ogle County, Illinois, and is responsible for the supervision and training of the Defendants, SMITH, GOODWIN and BURGESS. Defendant BUCK,

as the Chief of the Rochelle Police Department is further, responsible for making and/or implementing policies and practices used by law enforcement officers employed by the City of Rochelle, Illinois regarding arrests and detention.

> **ANSWER:**   Defendants admit the allegations of paragraph 10 of plaintiff's complaint.

11.    The Defendant, CITY OF ROCHELLE, is a political subdivision of the State of Illinois, for which Defendants SMITH, GOODWIN and BURGESS serve as police officers, and BUCK serves as Chief of Police. City of Rochelle is the political subdivision of the State of Illinois responsible for the training and supervision of Defendants SMITH, GOODWIN, BURGESS and BUCK. City of Rochelle has established or delegated to Defendant BUCK the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by City of Rochelle regarding arrests and detention.

> **ANSWER:**   Defendants admit the allegations of paragraph 11 of plaintiff's complaint.

### IV: FACTS

12.    Plaintiff and his estranged wife Rhia Fulgham (Rhia) were married in 2001 and by 2003 were separated. One child, Autumn; a daughter and at all times relevant a minor, was born to the parties.

> **ANSWER:**   Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 12 of plaintiff's complaint.

13.    Rhia subsequently filed for divorce on July 18, 2007 at Rockford, Illinois.

> **ANSWER:**   Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 13 of plaintiff's complaint.

14.    At the time of filing her divorce petition, Rhia had custody of the minor child.

> **ANSWER:**   Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 14 of plaintiff's complaint.

15.    On August 7, 2007, at the first hearing of Rhia's divorce petition, Plaintiff was awarded visitation with the minor child beginning August 11, 2007 and under the court ordered visitation, Plaintiff was to pick up the minor child from Rhia on alternate weekends beginning from 9:00am on Saturday until 7:00pm on Sunday. (see attached Plaintiffs exhibit A).

> **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 15 of plaintiff's complaint.

16.    Under the visitation arrangement agreed to by both Plaintiff and Rhia, Plaintiff would pick up and drop off the child at Rhia's apartment at 105 West McConaughy Avenue in Rochelle.

> **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 16 of plaintiff's complaint.

17.    On Sunday, August 12, 2007 while dropping off the child after his visitation with the child, Plaintiff arrived at Rhia's address and then advised Rhia to call the police because he had concerns about possible abuse based on what his daughter had told him.

> **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 17 of plaintiff's complaint.

18.    Before the police came to the scene, Rhia and her boyfriend Steven W odrazka came downstairs to Plaintiff's car and attempted to forcibly remove the child from Plaintiff's car.

> **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 18 of plaintiff's complaint.

19.    Seeing that the child was hesitant about exiting the car, Plaintiff advised Rhia that it was best to wait for the police to arrive. Plaintiff then exited from the car and wedged himself between the rear car door and Rhia in order to prevent Rhia from forcefully removing the child from the car.

> **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 19 of plaintiff's complaint.

20.     Within minutes, Sgt. Smith and Officer Burgess arrived at the scene. This was the first time Sgt. Smith and Officer Burgess became aware of the Plaintiff's and Rhia's custody and visitation issues.

      **ANSWER:**    Defendants admit that on August 27, 2007, Officer Burgess and Sgt. Smith responded to a domestic disturbance call at 105 West McConaughy Ave., in Rochelle, Illinois. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 20 of plaintiff's complaint.

21.     Upon arriving at the scene, Sgt. Smith and Officer Burgess demanded to know what was amiss and were given conflicting accounts by Rhia, Rhia's male friend Steve and Plaintiff.

      **ANSWER:**    Defendants admit the allegations of paragraph 21 of plaintiff's complaint.

22.     Rhia claimed that Plaintiff had physically assaulted her and demanded Plaintiff's immediate arrest. Sgt. Smith and Officer Burgess then looked Rhia over and not finding any signs of physical assault decided that her claim did not have any merit. Sgt. Smith did indicate in his report entered on August 15, 2007 that he looked Rhia over at the scene on August 12, 2007 but did not observe any injuries or signs of physical altercation. (see copy of Sgt. Smith's report marked Plaintiff's exhibit B)

      **ANSWER:**    Defendants admit that Rhia Fulgham alleged that she had been abused by plaintiff and that responding officers were not able to find physical evidence of an altercation. Defendants deny the remaining allegations of paragraph 22 of plaintiff's complaint.

23.     Fearing that his pick up and drop off of his daughter would be marked by arguments, Plaintiff then suggested and Rhia agreed that the picking up and dropping off the child should be done at the Rochelle police station.

      **ANSWER:**    Defendants admit that responding officers suggested that a neutral location should be found for picking-up the child, but deny the remaining allegations of paragraph 23 of plaintiff's complaint.

24.     Whereupon, Plaintiff and Rhia in the presence of Sgt. Smith and Officer Burgess entered into an oral agreement to pick up and drop off the child at the Rochelle police station. Officer Burgess did indicate in his report entered on August 12, 2007 that he and Sgt. Smith were privy to the agreement and further that there were no signs of physical altercation that would have justified an arrest of Plaintiff. (see attached copy of Officer Burgess' report marked Plaintiff's exhibit C).

> **ANSWER:**   Defendants admit that plaintiff and his ex-wife agreed that future visitation pick-ups would take place in the parking lot outside the Rochelle Police Department and admit that a copy of Officer Burgess's report is attached to plaintiff's complaint.

25.     On or about August 13, 2007, Rhia filed a petition for an order of protection against Plaintiff based on reports filed by Sgt. Smith, Officer Burgess and Sgt. Phil Frankenberry (see Sgt. Frankenberry's report marked as Plaintiff's exhibit D).

> **ANSWER:**   Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 25 of plaintiff's complaint.

26.     Plaintiff believes that Sgt. Smith and Officer Burgess conspired to write an erroneous report supporting Rhia's claim of physical assault in order to set in motion the chain of events that would lead to Plaintiff's eventual false arrest.

> **ANSWER:**   Defendants are without knowledge of what plaintiff believes and deny allegations regarding conspiracy or the filing of false reports.

27.     Plaintiff's belief of the foregoing stems from the fact that Sgt. Smith and Officer Burgess were well aware that no physical assault had occurred on August 12, 2007, but went ahead to file and support Rhia's phony report which enabled her to secure an Order of Protection against Plaintiff. In fact, Smith and Burgess knew that there was no basis for the order of protection.

**ANSWER:** Defendants deny knowledge that no physical assault had occurred but admit that Burgess's report reflects what Rhia Fulgham reported to him. Defendants deny any knowledge of the basis for the subject order of protection and deny the inference of paragraph 27 that they knew the order of protection had been sought.

28.    Rhia was granted an emergency order of protection by Judge Robert Hansen on August 13, 2007. (see attached document marked as plaintiff's exhibit E)

**ANSWER:** Defendants admit that the subject order of protection was entered by a court of competent jurisdiction and a copy of the subject order was provided by the clerk of the court to the Rochelle Police Department.

29.    On August 29, 2007, after a hearing on the order of protection Judge Robert Hansen entered a plenary order of protection against Plaintiff requiring Plaintiff to stay 300 feet away from Rhia and Rhia's residence.

**ANSWER:** Defendants admit that the subject order of protection was entered by a court of competent jurisdiction and a copy of the subject order was provided by the clerk of the court to the Rochelle Police Department.

30.    Within the said order of protection, Judge Hansen also maintained the visitation arrangement already in place between the parties and advised that for purposes of the visitation (Picking up and dropping off of the minor child), the 300 feet requirement in the order of protection will not apply. (see attached document marked as plaintiff's exhibit F)

**ANSWER:** Defendants deny the allegations of paragraph 30 of plaintiff's complaint in that the restrictions set forth in exhibit F do not make the alleged exceptions.

31.    On September 9, 2007, Plaintiff traveled from Maywood to Rochelle to drop off the minor child after his visitation with her. He drove up to the Rochelle police station where Rhia was supposedly waiting pursuant to their earlier agreement for the transfer of the child.

**ANSWER:** Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 31 of plaintiff's complaint.

32.    Upon arriving at the Rochelle Police Station, Plaintiff took daughter into the lobby of the station and handed her over to an officer who was in the lobby and advised that Rhia was within the building and promised to take the child to Rhia.

**ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 32 of plaintiff's complaint.

33.    As Plaintiff was walking back to his car, he was accosted by Sgt. Smith who emerged from the police station building. Sgt. Smith then threatened to arrest Plaintiff the next time Plaintiff was within three hundred (300) feet of Rhia.

**ANSWER:**    Defendants deny the allegations of paragraph 33 of plaintiff's complaint and affirmatively aver that Sgt. Smith advised plaintiff that the Rochelle P.D. had received notice of the entry of the plenary order of protection and that plaintiff should arrange to have a trusted third-party pick up the child in order that the order not be violated.

34.    Plaintiff demurred that the order of protection waived the 300 feet requirement for visitation purposes. Sgt. Smith told Plaintiff that he had seen Rhia's copy of the order and there was nothing in it permitting Plaintiff to come within 300 feet of Rhia. Plaintiff thereupon advised Sgt. Smith to look at the order again.

**ANSWER:**    Defendants deny the allegations of paragraph 34 of plaintiff's complaint.

35.    On October 6, 2007, Plaintiff, accompanied by a female friend, Karen, traveled to Rochelle for the purpose of picking up Plaintiff's daughter for his visitation with her.

**ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 35 of plaintiff's complaint.

36.    At about 9:07am, an agitated Rhia called Plaintiff's cell phone and stated that she was waiting at the station with their daughter and that she was becoming impatient because Plaintiff had failed to arrive at the appointed time of 9:00am. Plaintiff advised that he was about fifteen (15) minutes away and begged Rhia to be patient. However, Rhia threatened to leave if Plaintiff did not

get to the police station at 9:30am.

>        **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief
>                  as to the truth of the allegations of paragraph 36 of plaintiff's complaint.

37.    At about 9:25am, Plaintiff pulled up to the intersection of Route 251 and Route 38.
He was westbound and needed to make a left turn unto Route 251 which would bring him within
a few blocks of the Rochelle police station.

>        **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief
>                  as to the truth of the allegations of paragraph 37 of plaintiff's complaint.

38.    Whilst waiting for the light, Plaintiff saw Rhia's car on the north bound lane of Route
251. He could see that Rhia was in the driver's seat with Rhia's male friend, Steve in front and his
daughter in the rear. Rhia proceeded to cross the intersection and continued northbound on Route
251.

>        **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief
>                  as to the truth of the allegations of paragraph 38 of plaintiff's complaint.

39.    At this point, Plaintiff believed that Rhia was carrying out her threat of leaving with
the child thereby denying him visitation for which he had driven close to two hours from Maywood
to Rochelle.

>        **ANSWER:**    Defendants are without sufficient knowledge or information to form a belief
>                  as to the truth of the allegations of paragraph 39 of plaintiff's complaint.

40.    Plaintiff then called Rochelle Police Station on his cell phone and reported to the
police dispatch that he was supposed to pick up his daughter at the station but that he had just seen
her being driven away by Rhia. Plaintiff also advised the police dispatch that he was turning his car
around and going after Rhia's car. He requested that an officer be dispatched in order to effectuate
a peaceful pick up of the child. Plaintiff was advised that an officer would be dispatched.

> **ANSWER:**   Defendants admit that plaintiff called the Rochelle Police Department on October 6, 2007 and asked that police stop his ex-wife from leaving before his arrival.

41.    Plaintiff then followed Rhia's car into the parking lot of a vet's office on Route 251 and parked about fifty (50) feet from where she was parked. Whilst he did so, he remained on the telephone with the Dispatch at the Rochelle Police Station.

> **ANSWER:**   Defendants admit that both Rhia Fulgham and plaintiff drove their vehicles into the parking lot of a veterinary clinic near the Rochelle Police Department and that plaintiff was still in telephone contact with the Department at the time.

42.    The Rochelle Police Dispatch then put Sgt. Smith on the phone with Plaintiff and Plaintiff advised Smith that about what was going on. Smith advised Plaintiff to stay put at the parking lot and that he would be on his way shortly.

> **ANSWER:**   Defendants admit Sgt. Smith was patched-in to the phone call as alleged and that Sgt. Smith advised plaintiff to stay in his car until police arrived.

43.    Moments later, plaintiff could hear the sound of siren coming from the direction of the police station. Plaintiff also saw his daughter and Rhia's male friend exit from Rhia's car and walk into the vet's office.

> **ANSWER:**   Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 43 of plaintiff's complaint.

44.    Shortly thereafter two squad cars pull into the parking lot with amber lights flashing. Plaintiff was relieved that the police had responded so quickly. However, Plaintiff was mildly surprised when he saw that the police officer who was parked behind him, somewhat hedging his car in to prevent him from backing out was none other but Sgt. Smith. The officer in the other squad car was Officer Jason Goodwin.

**ANSWER:**   Defendants admit that they responded to plaintiff's call, but are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 44 of plaintiff's complaint.

45.     Upon seeing Sgt. Smith, Plaintiff began to exit his car, but Sgt. Smith immediately ordered him to remain inside the car. At the same time, Smith also advised Rhia who had gotten out of her car and was walking towards Smith, to get back to her car. Plaintiff was relieved, believing that since Smith had prior knowledge of the visitation arrangement, he would know how to handle the situation.

**ANSWER:**   Defendants admit that Sgt. Smith advised both plaintiff and his ex-wife to remain in their respective vehicles.

46.     Sgt. Smith then proceeded to the passenger door of Plaintiff's car and ordered Plaintiff's female friend Karen out of the car. Smith ordered Karen to remove everything in her pockets and then took her aside and advised her that he was going to place Plaintiff under arrest for violating an order of protection.

**ANSWER:**   Defendants deny the allegations of paragraph 46 of plaintiff's complaint.

47.     Plaintiff's female friend, Karen, was taken aback by the belligerent and hostile attitude of Sgt. Smith who acted as if he had a personal score to settle with Plaintiff.

**ANSWER:**   Defendants deny that Sgt. Smith was belligerent or hostile and are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 47 of plaintiff's complaint.

48.     Plaintiff strongly believes that Sgt. Smith was biased against him and had taken sides with Rhia because Plaintiff is black and Rhia is white. Plaintiff also believes that Sgt. Smith had conspired with Rhia to arrest and humiliate him.

**ANSWER:**   Defendants are without knowledge of what plaintiff believes and deny allegations regarding racial prejudice and conspiracy.

49.     Plaintiff also believes that Sgt. Smith had instigated Rhia to leave the police station rather than wait for Plaintiff to arrive in order to set in motion the events leading to plaintiff's false arrest. In an incident report filed by Sgt. Smith, he indicated that he advised Rhia to file a report and leave the police station) (See attached document marked as Plaintiff's exhibit G)

    **ANSWER:**    Defendants are without knowledge of what plaintiff believes and deny allegations regarding conspiracy and admit that a copy of Sgt. Smith's report reflecting the occurrence of October 6, 2007 is attached to plaintiff's complaint.

50.     After conversing with Plaintiff's female friend, Smith returned to Plaintiff's side of the car and ordered him out. He then asked him to put his hands behind his back. Smith proceeded to put handcuffs on Plaintiff's wrists.

    **ANSWER:**    Defendants admit that plaintiff was arrested for violation of the subject order of protection.

51.     After cuffing Plaintiff, Sgt. Smith advised Plaintiff that he was placing him under arrest for being within 300 feet of Rhia. Smith proceeded to walk Plaintiff to Officer Goodwin's squad car.

    **ANSWER:**    Defendants admit the allegations of paragraph 51 of plaintiff's complaint.

52.     Concerned that Sgt. Smith was overreacting, Plaintiff advised Smith that he was merely there to pick up his daughter pursuant to the visitation order. He then advised Smith to look at the Judge's order in an envelope in his car.

    **ANSWER:**    Defendants are without knowledge of plaintiff's state of mind, but admit that he was given an opportunity to show police a copy of the order at the time of his arrest.

53.     Officer Goodwin then placed the handcuffed Plaintiff in his squad car as Smith removed the court order from Plaintiff's car and proceeded together with Officer Goodwin proceeded to read through it.

**ANSWER:**   Defendants admit that plaintiff was given an opportunity to show police a copy of the order at the time of his arrest.

54.   After reading the court order, Sgt. Smith put it back in the envelope and kept the envelope with him. He then told plaintiff that he was arresting him anyway.

**ANSWER:**   Defendants admit that they believed they had probable cause to arrest plaintiff in that they had witnessed plaintiff in the commission of a crime in violating the terms of the subject domestic order of protection.

55.   The visitation arrangement between Plaintiff and Rhia was very much known by every virtually all the policemen at the Rochelle Police Station since it had been going on for some time. Therefore, Plaintiff was peeved that Sgt. Smith and Officer Goodwin insisted on placing him under arrest when they knew or should have known that he was in Rochelle merely to pick up his daughter.

**ANSWER:**   Defendants deny the allegations of paragraph 55 of plaintiff's complaint.

56.   Despite the fact that Sgt. Smith and Officer Goodwin were very familiar with the visitation arrangement between Plaintiff and Rhia and having had another opportunity of reviewing the Order of Protection, Sgt. Smith and Officer Goodwin still proceeded to place Plaintiff under arrest.

**ANSWER:**   Defendants deny the inference of paragraph 56 that they lacked probable cause to arrest plaintiff and admit that they arrested plaintiff.

57.   Plaintiff was then driven to the Rochelle Police Station by Officer Goodwin.

**ANSWER:**   Defendants admit the allegations of paragraph 57 of plaintiff's complaint.

58.   Shortly after Plaintiff arrived at the station, Plaintiff was accosted by Sgt. Smith who took Plaintiff to a room and without giving Plaintiff a Miranda warning demanded that Plaintiff explain "once again" why he should not be prosecuted for violating the order of protection.

**ANSWER:**   Defendants deny the allegations of paragraph 58 of plaintiff's complaint.

59.     Plaintiff again tried to explain to Smith that he had a right to be within 300 feet of Rhia pursuant to the visitation order and implored Smith to take "another look" at the Order which Smith still had in his possession.

**ANSWER:**     Defendants admit that plaintiff repeatedly denied any wrongdoing.

60.     Again, Sgt. Smith read through the order of protection and then told Plaintiff that he believed that Plaintiff was in violation of the order of protection. Smith advised plaintiff that he should clarify that with the court if he was in doubt.

**ANSWER:**     Defendants admit that they objectively believed that the terms of the domestic order of protection had been violated and that, thereby, they had probable cause to arrest plaintiff.

61.     Sgt. Smith then handed the order back to Plaintiff and again, Plaintiff indicated to Smith the portion of the order that Plaintiff believed waived the 300 feet requirement for visitation purposes.

**ANSWER:**     Defendants deny knowledge of what plaintiff believed and admit that they objectively believed that the domestic order of protection had been violated and that they had probable cause to arrest plaintiff.

62.     Again, Smith told Plaintiff that it was up to him, Smith, to choose the portion of the order that he wanted to act on. Smith then added that he had chosen to act on the 300 feet requirement and nothing else.

**ANSWER:**     Defendants admit that plaintiff was told he had violated the domestic order of protection.

63.     Plaintiff was then taken to a holding cell at the Rochelle Police Station where he remained until about 10 pm when sheriffs from the Ogle County jail arrived to pick him up.

**ANSWER:**     Defendants admit that plaintiff was held at the Rochelle Police Department until custody was transferred to the Ogle County Adult Detention Facility.

64.     Plaintiff believes that it was unreasonable for Sgt. Smith to have put him in the holding cell at the Rochelle Police Station for more than eleven hours.

ANSWER:     Defendants are without knowledge of what plaintiff believes and deny that his detention was unreasonable.

65.     Plaintiff also believes that Sgt. Smith intentionally left him at the holding cell and delayed informing the Ogle County jail about picking him up from Rochelle which was less than thirty minutes from Ogle County Jail at Oregon, in order to further humiliate Plaintiff and subject him to emotional torment and psychological abuse.

ANSWER:     Defendants are without knowledge of what plaintiff believes and deny the remaining allegations of paragraph 65 of plaintiff's complaint.

66.     Plaintiff was brought into the Ogle County jail at about 11:00pm on that October 6, 2007 where he was processed. His mug shot and fingerprint were taken and this contributed to Plaintiff's mental anguish and emotional torment.

ANSWER:     Defendants admit that his custody was transferred to the Ogle County Adult Detention Facility where he was booked.

67.     Plaintiff was then falsely charged with the offence of violation of order of Protection.

ANSWER:     Defendants deny the allegations of paragraph 67 of plaintiff's complaint.

68.     Plaintiff was subsequently released from custody on October 7, 2007 at about 6:00 pm more than thirty-two hours after his ordeal began.

ANSWER:     On information and belief, defendants admit that plaintiff was released from custody the next day.

69.     Plaintiff was slated to appear in court on a charge of violating the order of protection on October 26, 2007 but Plaintiff found out upon arriving at the court that the state's attorney's office had refused to press charges against him because he should never have been arrested in the first place.

**ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 69 of plaintiff's complaint.

70.    Each of the Defendants, individually, and in concert with others, acted under color of law in his/their official capacity, to deprive Plaintiff of his rights to freedom from illegal seizure of his person, and his rights to freedom from unlawful arrest, detention, and imprisonment. All of these rights are secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983.

**ANSWER:**    Defendants deny the allegations of paragraph 70 of plaintiff's complaint.

71.    The actions of defendants Sgt. Smith and Officer Goodwin were willful and wanton since they had prior cognizance of the visitation arrangement between Plaintiff and his estranged wife Rhia and also of the contents of the order of protection and still went ahead to subject plaintiff to cruel arrest and detention.

**ANSWER:**    Defendants deny the allegations of paragraph 71 of plaintiff's complaint.

72.    The actions of defendants, Officer Tyler Burgess and Sgt. Smith were willful and wanton since they were cognizance of the fact that Plaintiff neither caused any physical harm nor threatened to do so to his estranged wife Rhia yet they went ahead to set in motion the events leading up to Plaintiff's false arrest.

**ANSWER:**    Defendants deny the allegations of paragraph 72 of plaintiff's complaint.

73.    The Defendants, Rob Buck and the City of Rochelle, failed to adequately supervise the Defendants, Smith, Goodwin and Burgess.

**ANSWER:**    Defendants deny the allegations of paragraph 73 of plaintiff's complaint.

74.    At the time of the incidents alleged herein and before, Plaintiff was emotionally and physically healthy, active, and fully capable of engaging in normal day-to-day activities.

**ANSWER:**    Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 74 of plaintiff's complaint.

75.    Since the time of his false arrest and detention Plaintiff's ability to perform and enjoy his usual activities, including family and work-related activities, has been impaired. In addition, Plaintiff has suffered severe emotional distress and mental anguish affecting his psychological well-being.

**ANSWER:**    Defendants deny the allegations of paragraph 75 of plaintiff's complaint.

76.    As a direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiff sustained severe mental pain and suffering and injury in an amount that will be established at trial.

**ANSWER:**    Defendants deny the allegations of paragraph 76 of plaintiff's complaint.

77.    Plaintiff is entitled to compensation for the constitutional harms that the Defendants inflicted upon him, including personal injury and loss of liberty.

**ANSWER:**    Defendants deny the allegations of paragraph 77 of plaintiff's complaint.

78.    Plaintiff is entitled to compensation pursuant to Illinois common law for harms inflicted upon him by the Defendants.

**ANSWER:**    Defendants deny the allegations of paragraph 78 of plaintiff's complaint.

### V. CAUSES OF ACTION

### <u>COUNT I</u>

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**(General Allegations)**

79.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 79 of plaintiff's complaint.

80.    In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; and c) the right to be free from false arrest.

**ANSWER:**    Defendants admit that they were acting under color of law within the meaning of 42 U.S.C. § 1983 and deny the remaining allegations of paragraph 80 of plaintiff's complaint.

81.    In violating Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unauthorized, warrantless, and illegal arrest and detention of Plaintiff in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

**ANSWER:**    Defendants deny the allegations of paragraph 81 of plaintiff's complaint.

82.    As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C § 1983.

**ANSWER:**    Defendants deny the allegations of paragraph 82 of plaintiff's complaint.

83.    The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

**ANSWER:**    Defendants deny the allegations of paragraph 83 of plaintiff's complaint.

## COUNT II

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Failure to Implement Appropriate Policies, Customs and Practices)

84.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 84 of plaintiff's complaint.

85.    Defendant Rob Buck, in his capacity as Chief of Police of the Rochelle Police Department in Ogle County, Illinois, and the Defendant, City of Rochelle, implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the Rochelle Police Department to conduct arrests without regard to propriety and without justification or probable cause.

**ANSWER:**    Defendants deny the allegations of paragraph 85 of plaintiff's complaint.

86.    The failure of the Chief of Police, Rob Buck, and the City of Rochelle to adequately train and supervise the Defendants Smith, Burgess and Goodwin amounts to deliberate indifference to the rights of Plaintiff to be free from illegal arrest under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

**ANSWER:**    Defendants deny the allegations of paragraph 86 of plaintiff's complaint.

87.    As a result of this deliberate indifference to Plaintiff's rights, the Plaintiff suffered personal injuries and is entitled to relief under 42 U.S.C. § 1983.

**ANSWER:**    Defendants deny the allegations of paragraph 87 of plaintiff's complaint.

88.    In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff as alleged herein of certain constitutionally protected rights including, but

not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be

deprived of liberty without due process of law and; c) the right to be free from false arrest.

    **ANSWER:**    Defendants deny the allegations of paragraph 88 of plaintiff's complaint.

<u>**COUNT III**</u>

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(False Arrest)**

    89.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in

paragraphs 1-78 of this Complaint.

    **ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78
    of plaintiff's complaint as their answer to paragraph 89 of plaintiff's
    complaint.

    90.    In committing the acts complained of herein, Defendants Smith and Goodwin acted

under color of state law by falsely arresting and detaining the Plaintiff with no basis in fact or law

to do so. In violating Plaintiff's right to be free from false arrest, the Defendants violated Plaintiff's

rights under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

    **ANSWER:**    Defendants deny the allegations of paragraph 90 of plaintiff's complaint.

    91.    As a direct and proximate result of the violation of his constitutional right to be free

from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages

as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983.

    **ANSWER:**    Defendants deny the allegations of paragraph 91 of plaintiff's complaint.

<u>**COUNT IV**</u>

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Malicious abuse of Process)**

    92.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in

paragraphs 1-78 of this Complaint.

**ANSWER:**     Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 92 of plaintiff's complaint.

93.     Defendants maliciously used a "legal process" to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

**ANSWER:**     Defendants deny the allegations of paragraph 93 of plaintiff's complaint.

94.     Defendants Smith and Burgess supported Rhia's baseless allegations of physical assault knowing same to be false and fabricated in order to set the events that would lead to Plaintiff's arrest in motion.

**ANSWER:**     Defendants deny the allegations of paragraph 94 of plaintiff's complaint.

95.     Defendant Sgt. Smith advised Rhia to leave the Rochelle Police Station on the day of Plaintiff's visitation with his child, knowing that such in order to set in motion events that would lead to Plaintiff's arrest.

**ANSWER:**     Defendants deny the allegations of paragraph 95 of plaintiff's complaint.

96.     Defendant Sgt. Smith had the opportunity of reading through the order of protection several times prior to and on the date of the arrest and resorted to arresting and detaining Plaintiff because that is what he had intended all along.

**ANSWER:**     Defendants admit that Sgt. Smith read the subject order of protection, but deny the inference of paragraph 96 that plaintiff's arrest was without probable cause.

97.     Defendants Sgt. Smith and Officer Burgess knew or should have known that there was no basis to support Rhia's order of protection.

**ANSWER:**     Defendants deny the allegations of paragraph 97 of plaintiff's complaint.

98.     Defendants Sgt. Smith and Officer Goodwin knew or should have known that Plaintiff should not have been arrested.

**ANSWER:**     Defendants deny the allegations of paragraph 98 of plaintiff's complaint.

99.     In committing the acts complained of herein, Defendants Smith, Burgess and Goodwin acted under color of state law by malicious abuse of process and subjecting Plaintiff to cruel maltreatment with no basis in fact or law to do so. In violating Plaintiff's right to be free from false arrest, the Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

**ANSWER:**     Defendants deny the allegations of paragraph 99 of plaintiff's complaint.

100.     As a direct and proximate result of the violation of his constitutional right to be free from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

**ANSWER:**     Defendants deny the allegations of paragraph 100 of plaintiff's complaint.

## COUNT V

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Conspiracy)**

101.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**     Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 101 of plaintiff's complaint.

102.     As a result of the concerted unlawful and malicious conspiracy of Defendants Smith, Burgess and Goodwin, Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the

Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

**ANSWER:**    Defendants deny the allegations of paragraph 102 of plaintiff's complaint.

103.    As a direct and proximate result of the violation of his constitutional right to be free from false arrest by the Defendants, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983.

**ANSWER:**    Defendants deny the allegations of paragraph 103 of plaintiff's complaint.

## COUNT VI

### Illinois Common Law
### (False Arrest / False Imprisonment)

104.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 104 of plaintiff's complaint.

105.    Plaintiff avers that the Defendants breached a duty of care owed to Plaintiff, so as not to deprive him of his personal liberty, by intentionally restraining or detaining Plaintiff without just cause and without due mittimus from a court.

**ANSWER:**    Defendants deny the allegations of paragraph 105 of plaintiff's complaint.

106.    Plaintiff avers that the Defendants, without probable cause, wrongfully and unlawfully detained and restrained Plaintiff against his will through use of force for a period of close to thirty-two hours.

**ANSWER:**    Defendants deny the allegations of paragraph 106 of plaintiff's complaint.

107.    At no time during the detainment did Plaintiff resist or attempt to resist the Defendant officers, but was fully cooperating with the orders of the Defendants who intimidated Plaintiff with uniforms.

**ANSWER:**    Defendants deny the allegations of paragraph 107 of plaintiff's complaint.

108.    Plaintiff avers that the Defendants are liable to him for false arrest and false imprisonment.

**ANSWER:**    Defendants deny the allegations of paragraph 108 of plaintiff's complaint.

109.    As a direct and proximate result of the false imprisonment by the Defendants, Plaintiff suffered serious personal injuries and severe emotional distress.

**ANSWER:**    Defendants deny the allegations of paragraph 109 of plaintiff's complaint.

## COUNT VII

### Illinois Common Law
### (Negligence)

110.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 110 of plaintiff's complaint.

111.    Each Defendant owed Plaintiff a duty to use due care at or about the times of the aforementioned incident.

**ANSWER:**    Defendants deny the allegations of paragraph 111 of plaintiff's complaint.

112.    In committing the aforementioned acts and/or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to the Plaintiff as alleged herein.

**ANSWER:**    Defendants deny the allegations of paragraph 112 of plaintiff's complaint.

## COUNT VIII

### Illinois Common Law
### (Negligent Supervision)

113.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

**ANSWER:**    Defendants adopt and incorporate their answers to paragraphs 1 through 78 of plaintiff's complaint as their answer to paragraph 113 of plaintiff's complaint.

114.    Each Defendant owed Plaintiff a duty to use due care at or about the time of the aforementioned incidents.

**ANSWER:**    Defendants deny the allegations of paragraph 114 of plaintiff's complaint.

115.    Defendants Chief Buck and City of Rochelle, Illinois negligently supervised Defendants Smith, Burgess and Goodwin by failing to provide proper training and outline proper procedure in confronting and arresting people.

**ANSWER:**    Defendants deny the allegations of paragraph 115 of plaintiff's complaint.

116.    In committing the aforementioned acts or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to Plaintiffs as alleged herein.

**ANSWER:**    Defendants deny the allegations of paragraph 116 of plaintiff's complaint.

For all of the foregoing reasons, defendants, Chester Smith, Jason Goodwin, Tyler Burgess, Rob Buck and the City of Rochelle, pray this Court for entry of an order dismissing plaintiff, Eric Fulgham's complaint in its entirety and with prejudice.

## AFFIRMATIVE DEFENSES

Defendants, Chester Smith, Jason Goodwin, Tyler Burgess, Rob Buck and the City of Rochelle, Illinois, for their affirmative defenses, state as follows:

### First Affirmative Defense

Plaintiff, Eric Fulgham, has failed to adequately state a claim which, if supported by a showing of any set of facts consistent with the allegations of his complaint, would entitle him to relief.  Fed. R. Civ. P. 12(b)(6).

### Second Affirmative Defense

1.    At all of the times and places of the occurrences complained of by Eric Fulgham, defendants Smith, Goodwin and Burgess, were acting in an objectively reasonable manner in that defendants responded to emergency calls for assistance and ultimately believed in an objectively reasonable manner that probable cause existed to arrest plaintiff.

2.    To the extent that Smith, Goodwin and Burgess have been sued in their individual capacities, each is entitled to qualified immunity from suit.

### Third Affirmative Defense

1.    Defendants Smith, Goodwin and Burgess have each been sued in their individual capacities for allegedly acting maliciously and with reckless disregard for Fulgham's federally protected rights.

2.    To the extent that the complaint does not allege that the individual defendants were acting in their official capacities, there can be no liability on the part of the City of Rochelle, Illinois.

3.    The complaint further alleges that the employee defendants acted intentionally or with reckless indifference for the plaintiff so there can be no *respondeat superior* liability on the part of City of Rochelle, Illinois.

**Fourth Affirmative Defense**

1.    Several counts of Fulgham's complaint purport to be brought pursuant to the common law of Illinois and, as to those counts, at the time and place complained of in plaintiff's first amended complaint, there was in effect in Illinois a statute commonly known as the Illinois Municipal Employees Tort Immunity Act ("Tort Immunity Act") which provided, among other things, that:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

745 ILCS 10/2-202.

2.    The Tort Immunity Act further provided that no public employee would be liable in negligence for injuries arising out of the performance of discretionary acts and effecting an arrest is a discretionary act.  745 ILCS 10/2-201.

<div style="margin-left:50%">

___/s/  Stephen E. Balogh_____

Stephen E. Balogh
Attorney for defendants,
SGT. CHESTER SMITH, OFFICER JASON
GOODWIN, OFFICER TYLER BURGESS, CHIEF
ROB BUCK & CITY OF ROCHELLE, ILLINOIS
WilliamsMcCarthy LLP
120 W. State St., Suite 400
P.O. Box 219
Rockford, IL  61105-0219
Telephone:  (815) 987-8946
Facsimile:  (815) 968-0019
E-mail:  sbalogh@wilmac.com

</div>

## CERTIFICATE OF LAWYER

The undersigned hereby certifies that on February 12, 2008, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Attorney Uche O. Nwakudu
1301 W. 22nd Street, Suite 108
Oak Brook, IL  60523


        /s/  Stephen E. Balogh
Stephen E. Balogh
Attorney for defendants,
Sgt. Chester Smith, Officer jason Goodwin, Officer Tyler Burgess, Chief Rob Buck & City of Rochelle, Illinois, Defendants
WilliamsMcCarthy LLP
120 W. State St., Suite 400
P.O. Box 219
Rockford, IL  61105-0219
Telephone:  (815) 987-8946
Facsimile:  (815) 968-0019
E-mail:  sbalogh@wilmac.com